IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-01492-BNB-PAC

PROTOCOLS, LLC d/b/a MEDICAL SETTLEMENT PROTOCOLS, LLC, and
SAGRILLO HAMMOND DINEEN & KASTETTER, LLC.,

Plaintiffs,

v.

MICHAEL O. LEAVITT, in his capacity as the Secretary of the Department of Health and
Human Services, and
DR. MARK B. MCCLELLAN, in his capacity as Administrator of the Centers for Medicare and
Medicaid Services,

Defendants.
_____

**ORDER**
_____

This matter is before me on the following motions:

(1) **Defendants' Motion to Dismiss** [Doc. #12, filed 10/31/05];

(2) Defendants' **Motion for Summary Judgment and Supporting Brief** [Doc. #41, filed 7/28/06]; and

(3) **Plaintiffs' Motion for Summary Judgment on All Claims** [Doc. #39, filed 7/28/06].

The defendants' motion for summary judgment is GRANTED, and this case is DISMISSED based on the plaintiffs' lack of standing. The defendants' motion to dismiss and plaintiffs' motion for summary judgment are DENIED AS MOOT.

## I.   STANDARD OF REVIEW

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  Rule 56(c), Fed. R. Civ. P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, and affidavits the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and by reference to evidence designate specific facts showing that there is a genuine issue for trial.  Id. at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment.  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.   BACKGROUND

This case involves the Medicare as Secondary Payer statute ("MSP").  The Third Circuit Court of Appeals has summarized the statute as follows:

> Prior to 1980, Medicare generally paid for medical services whether or not the recipient was also covered by another health plan. See Social Security Amendments of 1965, Pub.L. No. 89-97, §

1862(b), 79 Stat. 286.  However, beginning in 1980, Congress enacted a series of cost cutting amendments to the Medicare program.  These amendments are collectively known as the Medicare as Secondary Payer ("MSP") statute or the MSP provisions.  See New York Life Ins. Co. v. United States, 190 F.3d 1372, 1374 (Fed. Cir.1999).  FN2

FN2.  The amendments have been codified at 42 U.S.C. § 1395y(b).

The MSP statute was designed to curb skyrocketing health costs and preserve the fiscal integrity of the Medicare system.  See Zinman v. Shalala, 67 F.3d 841, 845 (9th Cir.1995); H.R.Rep. No. 96-1167, at 352 (1980).  The MSP attempted to lower overall federal Medicare disbursements by requiring Medicare beneficiaries to exhaust all available insurance coverage before looking to Medicare's coverage.  See United States v. Rhode Island Insurers' Insolvency Fund, 80 F.3d 616, 618 (1st Cir.1996).  The MSP assigns primary responsibility for medical bills of Medicare recipients to private health plans when a Medicare recipient is also covered by private insurance.  These private plans are therefore considered "primary" under the MSP and Medicare acts as the "secondary" payer responsible only for paying amounts not covered by the primary plan.  FN3  Blue Cross and Blue Shield of Texas v. Shalala, 995 F.2d 70, 73 (5th Cir.1993).

FN3.  "Before 1980, if a Medicare beneficiary had an alternate source of payment, such as private insurance or an employee group health plan, Medicare was the primary payer, and the health plan was the secondary payer, liable only for the costs that remained after Medicare made its payments.  Private insurers even wrote this practice into their health insurance contracts.  Congress enacted the MSP statute to reverse the order of payment in cases where Medicare beneficiaries have an alternate source of payment for health care."  Blue Cross and Blue Shield of Texas, 995 F.2d at 73 (citations omitted).

Congress established two principal directives to achieve this objective.  First, the MSP bars Medicare payments where "payment has already been made or can reasonably be expected to be made promptly (as determined in accordance with regulations)" by a primary plan.  42 U.S.C. § 1395y(b)(2)(A) (parenthetical in original).  "Prompt" payment is defined in the applicable regulations as payment made within 120 days of either the date on which care

> was provided or when the claim was filed with the insurer, whichever is earlier.  See 42 C.F.R. §§ 411.21, 411.50.  The MSP defines a "primary plan" as "a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance [.]"  42 U.S.C. § 1395y(b)(2)(A)(ii) (parenthetical in original).  This provision "is intended to keep the government from paying a medical bill where it is clear an insurance company will pay instead."  Evanston Hosp. v. Hauck, 1 F.3d 540, 544 (7th Cir.1993) (citation omitted).  Second, the MSP provides that when Medicare makes a payment that a primary plan was responsible for, the payment is merely conditional and Medicare is entitled to reimbursement for it.  42 U.S.C. § 1395(y)(b)(2)(B); Blue Cross and Blue Shield of Texas v. Shalala, 995 F.2d 70, 73 (5th Cir.1993) (2002).  Section 1395y(b)(2)(B) provides:
>
>> Any payment under this subchapter with respect to any item or service to which subparagraph (A) applies shall be conditioned on reimbursement to the appropriate Trust Fund established by this subchapter when notice or other information is received that payment for such item or service has been or could be made under such subparagraph.
>
> 42 U.S.C. § 1395y(b)(2)(B)(I).  Medicare payments are subject to reimbursement to the appropriate Medicare Trust Fund once the government receives notice that a third-party payment has been or could be made with respect to the same item or service.  FN4   Id.
>
> FN4. If MSP reimbursement is not made, the MSP authorizes the government to bring an action against "any entity which is required or responsible ⋯ to make payment ⋯ under a primary plan" and against "any other entity (including a physician or provider) that has received payment from that entity."  42 U.S.C. § 1395y(b)(2)(B)(ii).  The MSP also gives the government a separate right of subrogation.  42 U.S.C. § 1395y(b)(2)(iii).

Fanning v. U.S., 346 F.3d 386, 388-89 (3rd Cir. 2003).

4

### III.  UNDISPUTED MATERIAL FACTS[1]

1.  Workers' compensation settlements typically include funds for reimbursement of medical care rendered prior to the date of the workers' compensation settlement for a work-related injury, illness, or disease; funds to cover the cost of future medical care; and funds for replacement of wage and/or disability loss.  *Defendants' Motion for Summary Judgment*, Exhibit A, ¶ 3.

2.  To the extent a workers' compensation claimant receives funds for future medical care, Medicare is prohibited by statute from paying for Medicare reimbursable medical items and services that are related to the work injury or disease.  Id. at ¶ 4.

3.  Defendant Centers for Medicare & Medicaid Services ("CMS") developed a set-aside process to ensure that Medicare would not pay for future medical care that was compensated for by a workers' compensation settlement, judgment, or award, but would pay for medical care once the set-aside funds were properly exhausted.  Id. at ¶ 5.

4.  The plaintiffs and the defendants agree that in order to create a set-aside, the parties to a workers' compensation settlement must designate a portion of the settlement proceeds as funds for future medical expenses.  *Defendants' Motion for Summary Judgment*, p. 3; *Plaintiffs' Response to Defendants' Motion for Summary Judgment*, p. 3.

---

[1]The plaintiffs attempt to dispute material factual statements without citation to evidence or by providing a general citation to briefs.  *Plaintiffs' Response to Defendants* [sic] *Motion for Summary Judgment and Supporting Brief*, [Doc. #44], pp. 2-4.  It is the litigants' responsibility to provide the court with concise arguments, relevant facts, and specific citations to authorities and supporting evidence.  Toth v. Gates Rubber Co., 2000 WL 796068, *8 (10th Cir. 2000).  It is not the Court's duty to search briefs for evidence to support the plaintiffs' claim.  See Gross v. Burggraf Construction Co., 53 F.3d 1531, 1546 (10th Cir. 1995).

5. The plaintiffs and the defendants agree that CMS provides a review of proposed set-aside funds. *Defendants' Motion for Summary Judgment*, p. 3; *Plaintiffs' Response to Defendants' Motion for Summary Judgment*, p. 3, 6.

6. Plaintiff Sagrillo Hammond Dineen & Poskus, LLC ("SHDP"), is a law firm which provides MSP and Medicare set-aside consultation services. *Plaintiffs Response to Defendants' Motion to Dismiss* [Doc. #15, filed 11/11/05], attachment to response at ¶¶ 1, 4.

8. Plaintiff Protocols, LLC a/k/a Medical Settlement Protocols, LLC ("Protocols"), is a medical consulting firm which provides MSP and Medicare set-aside consultation services. Id. at ¶ 5.

The plaintiffs bring four claims for declaratory relief. In Claim One, the plaintiffs allege that 42 C.F.R. § 411.47 provides a formula to be used in establishing the amount of a set-aside. The plaintiffs further allege that on July 11, 2005, CMS declared in a memorandum that 42 C.F.R. § 411.47 only addresses conditional (past) payments and does not establish a formula to be used in establishing the amount of a set-aside. The plaintiffs allege that the July 11 memorandum is contrary to (a) the plain meaning of the regulation; (b) the structure and meaning of all the regulations under the MSP statute; (c) CMS' own previous interpretations in the Medicare Coverage Manual and the Medicare Intermediary Manual; (d) CMS' own historical interpretations of the regulations; and (e) the legislative purpose of the MSP and the language of the MSP statute. Plaintiffs seek a declaratory judgment that the memorandum is invalid and that 42 C.F.R. § 411.47 establishes a formula to be used in establishing the amount for a set-aside.

In Claim Two, the plaintiffs allege that CMS is illegally conducting an arbitrary and capricious review of all settlements and set-asides and is demanding arbitrary, capricious,

unreasonable, unsupported, and illegal amounts from the parties to fund the set-asides. Claim Two further alleges that if the parties do not agree to CMS' demands, "then CMS uses its disregard authority [sic] to deny payment for medical care to Medicare beneficiaries," thereby exposing the plaintiffs and the parties to damages. *Complaint* [Doc. # 1-1, filed 8/5/05], ¶70. CMS does not allow for any appeal or review process. Contrary to the MSP and the Constitution, CMS requires the submitter or beneficiary to carry the burden to prove that it allocated an appropriate amount.

In Claim Three, the plaintiffs allege that Medicare used the memorandum of July 11, 2005, to make substantial changes in its interpretation of the MSP which contradicts the current regulations, in violation of 42 U.S.C. § 1395hh and 5 U.S.C. § 551 *et. seq.*

Claim Four alleges that in May of 2004, CMS disallowed any party to a settlement to recover procurement costs in violation of 42 C.F.R. § 411.37.

## IV. ANALYSIS

In both their motion to dismiss and their motion for summary judgment, the defendants seek dismissal of the Complaint because the plaintiffs lack standing to bring this action.

### A. Standing

Article III of the Constitution provides that the federal courts may adjudicate only "cases and controversies." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). The "case or controversy" requirement ensures that courts consider only tangible disputes capable of resolution rather than disputes presenting purely hypothetical or abstract issues. Flast v. Cohen, 392 U.S. 83, 94-95 (1968).

Standing to sue is part of the common understanding of what makes a case justiciable. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). The party invoking federal jurisdiction bears the burden of establishing standing. Id. at 104. To establish the irreducible constitutional minimum of standing, a party must allege and ultimately prove: (1) an injury in fact suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical; (2) a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) a likelihood that the requested relief will redress the alleged injury. Id. at 102-03 (internal quotations and citations omitted). To this end:

> Plaintiffs bear the burden of proving standing with the manner and degree of evidence required at the particular stage of the litigation. In response to a summary judgment motion, the nonmovant must present specific facts by affidavit or other evidence, which will be taken as true for purposes of the motion. Summary judgment is then proper if there is no genuine issue of material fact so that the moving party is entitled to judgment as a matter of law. Gilbert v. Shalala, 45 F.3d 1391, 1394 (10th Cir.1995) (citations omitted); see Cache Valley Elec. Co. v. State of Utah Dep't of Transp., 149 F.3d 1119, 1124 (10th Cir.1998) (holding that "[a]t summary judgment, it is a plaintiff's burden to adduce evidence sufficient to establish necessary jurisdictional facts" and, thus, plaintiff "may not establish standing by merely hypothesizing"), cert. denied, 526 U.S. 1038, 119 S.Ct. 1333, 143 L.Ed.2d 498 (1999).

Hutchinson v. Pfeil, 211 F.3d 515, 519-20 (10th Cir. 2000).

Because the defendants' motion for summary judgment challenges plaintiffs' standing to sue, the plaintiffs bear the burden of demonstrating their standing by presenting evidence of specific facts through affidavits or other evidence.[2] Id.

---

[2]The plaintiffs assert that the defendants' request for summary judgment on the issue of standing is defeated because the defendants do not offer any evidence in support of their argument. *Plaintiffs' Response to Defendants' Motion for Summary Judgment*, p. 16. This assertion is contrary to the burden of proof set forth in Pfeil. Moreover, even in motions for

8

The plaintiffs assert that they "have proven with expert reports and affidavits their injury in fact." *Plaintiffs' Response to Defendants' Motion for Summary Judgment*, p. 16, (title to section F). The plaintiffs do not provide specific arguments regarding standing, nor do they cite to any specific portions of the expert reports or affidavits. The plaintiffs do, however, incorporate by reference Section III of "Plaintiffs' Motion for Summary Judgment on All Claims" [Doc. #39]. *Plaintiffs' Response to Defendants' Motion for Summary Judgment*, p. 13. Therefore, in my analysis of standing, I have considered Section III and the affidavits and expert materials provided in each of the plaintiffs' briefs.

The plaintiffs have submitted the following affidavits and expert materials: (1) Affidavit of Robert L. Sagrillo [attached to their response to the motion to dismiss, Doc. #15, filed 11/11/05] (the "First Sagrillo Affidavit"); (2) Second Affidavit of Robert L. Sagrillo in Support of Summary Judgment [attached to their response to the defendants' motion for summary judgment, Doc. #44, filed 8/17/06] (the "Second Sagrillo Affidavit"); and (3) Affidavit of Robert L. Sagrillo in Support of Summary Judgment (the "Third Sagrillo Affidavit") and the Affidavit of Daniel B. Seff, CPA, CVA [attached to their motion for summary judgment, Doc. #39, filed 7/28/06].

The First Sagrillo Affidavit comprehensively summarizes the plaintiffs' argument in support of standing. Robert L. Sagrillo, the managing member of Protocols and one of two managing members of SHDP, states:

---

summary judgment that do not challenge standing, "[t]he moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

> Medicare's review process [of the set-aside funds] consists entirely of making a determination of what amount it seeks by a methodology that is not published, is secretive and is clearly violative of the applicable law. Medicare does not allow appeals of its determinations.
>
> If the parties disagree with CMS' determination as to the appropriate Medicare set-aside allocation, and do not fund the Medicare set-aside in an amount dictated by CMS, then CMS takes the position that the parties are in violation of the MSP.
>
> If the parties do not submit the Medicare set-aside for its approval, which is optional and not mandatory under the law, then CMS deems such failure as non-compliance with the MSP and threatens the beneficiaries with loss of benefits and the consultants with future collection actions at an undetermined time. Those actions have harmed, and continue to harm, Protocols, LLC and SHDP.
>
> The first harm is that both entities do not know whether or when CMS may seek to enforce its MSP rights against the Plaintiffs. This enforcement action cannot occur until all of the funds [] allocated to the Medicare set-aside [are] fully consumed and Medicare has made a payment as a primary payer. Since many of the Medicare set-aside[] allocations provided funds for years, these enforcement actions may not occur until then. Since SHDP and Protocols, LLC cannot determine the extent or likelihood of challenges to its actions under the MSP, it is hampered [in] its ability to use its revenue for capital operating costs. While all revenue was reasonably known prior to the change in policy, now it is not and the revenue is hidden with potential liabilities that cannot be quantified [and] will linger for years to come. As a result of these harms to both Protocols, LLC and SHDP are severely hampered in their ability to plan, grow or sell their business.
>
> SHDP is uniquely harmed since the removal of any meaningful review process concerning the applicable Medicare law or the underlying state workers' compensation law or the underlying insurance policy is removed from CMS' determination. Since CMS now reviews the proposals, provides the parties with a "you pay or suffer the consequences" determination and since no appeals can be made from this determination, all legal aspects of the Medicare set-aside allocation and approval are removed. This now allows our major competitors, (our all [sic] major competitors are non-law

>firms and only nurse consulting firms) to compete equally with SHDP.  This increase in competitors has caused SHDP to lose business and will cause SHDP to lose future business.
>
>Protocols, LLC has suffered unique harm since the value of the business entity has dropped due to the questions of revenue and whether that revenue will be challenged by CMS.  Over the past three years, members of Protocols, LLC have been working to position the business for sale.  With the lack of an appeal process, the inherent value of Protocols, LLC has been significantly reduced due to contingent liabilities that cannot be effectively calculated.

*First Sagrillo Affidavit*, ¶ 11-16.  The Second and Third Sagrillo Affidavits contain similar allegations.

Affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence.  Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted).  "Conclusory and self-serving affidavits are not sufficient."  Id.

Mr. Sagrillo attests that the plaintiffs' injury in fact is economic harm.  At the heart of Mr. Sagrillo's claim of injury is his allegation that CMS is currently determining set-aside amounts "by a methodology that is not published, is secretive and is clearly violative of the applicable law."  However, the plaintiffs do not submit any proof that Medicare has actually reviewed a proposed set-aside in a way that is "not published, is secretive and is clearly violative of the applicable law."

The plaintiffs are attempting to fashion an injury in fact (economic harm) out of unsupported and conclusory allegations of wrongdoing.  As a result, the alleged injury is not concrete and actual or imminent.  Instead, the plaintiffs' claim of injury "rests on conjecture based on speculation that is bottomed on surmise . . . ."  Pfeil, 211 F.3d at 521 (internal quotations omitted).

The plaintiffs attempt to bolster their conclusory assertions with the Affidavit of Daniel B. Seff, CPA, CVA. Mr. Seff states that if he were called to testify, he would testify to the conclusions specified in his letter dated March 31, 2006. *Plaintiff's Motion for Summary Judgment on All Claims* [Doc. #39, filed 7/28/06], Exhibit 3. In his letter, Mr. Seff concludes that the defendants' interpretation of 42 C.R.F. §§ 411.46 and 47 decreases the value of Protocols and SHDP. However, in order to reach his conclusion, Mr. Seff relies on the unsupported assertion that CMS is currently evaluating set-aside funds differently than before. Therefore, Mr. Seff's conclusion of economic injury is no more concrete than Mr. Sagrillo's claim of injury.

I note that Claim Four does not challenge CMS's determination of set-aside funds. Claim Four alleges that in May of 2004, CMS disallowed any party to a settlement to recover procurement costs in violation of 42 C.F.R. § 411.37. The plaintiffs do not provide any separate argument regarding their standing to bring Claim Four, and they do not submit any evidence to prove that they have suffered a concrete injury from CMS's alleged violation of section 411.37. Therefore, the plaintiffs have not established standing to bring Claim Four.

## V.  CONCLUSION

IT IS ORDERED that the defendants' Motion for Summary Judgment and Supporting Brief [Doc. #41, filed 7/28/06] is GRANTED and this action is DISMISSED based on the plaintiffs' lack of standing.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss [Doc. #12, filed 10/31/05] and Plaintiffs' Motion for Summary Judgment on All Claims [Doc. #39, filed 7/28/06] are DENIED AS MOOT.

Dated March 7, 2007.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge